

FILED ENTERED
LODGED RECEIVED

SEP 0 9 2015

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IDRIS ABDUS-SHAHID, ET AL. | * | |
| | * | |
| v. | * | Civil No. – JFM-15-1972 |
| | * | |
| MAYOR AND CITY COUNCIL OF BALTIMORE CITY | * | |

\*\*\*\*\*\*

## MEMORANDUM

Plaintiffs, Idris Abdus-Shahid and Baiyina Jones, have brought this action challenging the decision of Baltimore City to drop spousal coverage for Jones under the City's health insurance plan. Abdus-Shahid is an employee of the City and, in response to a request by the City, did not produce a certificate of marriage verifying that Jones was his wife. Plaintiffs allege that they are observant Muslims, that they were married in an Islamic ceremony conducted on June 6, 1998, and that in order to obtain a recordation of their marriage, they would have to obtain a marriage license, which is "contrary to their religious beliefs." Plaintiffs allege that the City's decision deprived them of their right to exercise their religion under the First and Fourteenth Amendments of the US Constitution and analogous rights under Article 36 of the Maryland Declaration of Rights of the Maryland Constitution. They also allege that they were denied due process of law in violation of Article 24 of the Maryland Declaration of Rights. Abdus-Shahid has additionally asserted a claim under Title VIII.

The Mayor and City Council of Baltimore have filed a motion to dismiss. The motion will be granted.

As an initial matter, Baltimore City contends that plaintiffs' state law claims are barred by the fact that they did not comply with the procedure set forth in the Maryland Local Government Tort Claims Act. Plaintiffs argue that the Act does not apply because they are seeking only declaratory relief. Although the City concedes that the Act does not apply to actions solely for declaratory judgments, *see Rounds v. Maryland Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 646 (2015), Plaintiffs are not seeking only declaratory relief. Their complaint demands "that the Court determine the respective rights and remedies of the parties with respect to these issues," and presumably they are requesting that the City reinstate Jones's health insurance and pay the City's portion of Jones's premiums. Therefore, this action is not one solely for declaratory relief.

Abdus-Shahid's Title VII claim is equally flawed. He apparently is pursuing a claim for disparate impact but he asserted no such claim before the EEOC. He therefore cannot pursue it in this action. *See, e.g. Abood v. Atwood*, Case No. 96-1689, 1996 U.S. App. LEXIS 30250, at *2 (4th Cir. Nov. 21, 1996). To the extent that he is asserting a claim for disparate treatment, the claim is barred because, for the reasons I will now state, the City has articulated a non-pretextual justification for the decision it made.

The real issue here is whether the City, by requiring Abdus-Shadhid to produce a certificate of marriage – which requires the issuance of a marriage license - to justify his obtaining spousal coverage for Jones infringed upon plaintiff's Constitutional rights. Plaintiffs assert, and I have no reason to doubt the sincerity of the assertion, that they "believe that their marriage was and is sanctioned by Allah, and that "their faith does not require a license and they

wish to live according to the tenants of Islam." (Opp. Memo, at 7).[1] They presented a certificate from the Imam who performed their ceremony but the Clerk of the Circuit Court for Baltimore City did not accept the certificate for recording because plaintiffs had not obtained a marriage license before the ceremony. Thus, the question presented is whether obtaining a marriage license in alleged violation of one's religious beliefs is a Constitutional violation.[2]

The City's requirement that an employee of the City obtain a certification of recordation of a marriage in order to provide health insurance coverage for the employee's spouse is neutral on its face. It is not directed solely at Muslims, Roman Catholics, Hindus, members of Protestant churches, or any other religion. Moreover, it is reasonable since it provides a common standard by which to determine whether spouses should be afforded health insurance coverage. The requirement also only incidentally affects the exercise of religion. Persons are free to be married in whatever ceremony, religious or otherwise, they choose. The law only requires that before doing so, they obtain a marriage license so that their marriage can be recorded. This does not imply, as plaintiffs appear to contend, that it is a secular rather than a religious authority that gives sanctity to a marriage. The law simply provides a reasonable means for secular authorities to perform the secular obligations the law imposes upon them. Under these circumstances, the

---

[1] Presumably, many Christians also believe that their marriage "was and is sanctioned by" the Almighty (if one there be), not by conferral of a marriage license.

[2] The Maryland courts have, in the context of divorce proceedings, recognized a marriage where the spouse has failed to first obtain a valid license prior to the ceremony. *See Picarella v. Picarella*, 20 Md. App. 499 (1974); *Tshiani v. Tshiani*, 208 Md. App. 43 (2012). Therefore, I attempted to avoid deciding the constitutional issue by having the parties dismiss this action without prejudice and pursue an action in state court for the purpose of determining whether the Maryland courts would find plaintiffs' marriage valid and direct the Clerk to record their marriage. The parties declined to follow this suggestion.

requirement of obtaining a marriage license does not infringe on plaintiffs' Constitutional rights. *See generally Employment Division v. Smith*, 494 U.S. 872 (1990).[3]

A separate order granting the City's motion to dismiss is being entered herewith.

Date: 9/9/15

J. Frederick Motz
United States District Judge

---

[3] I also note that the administrator of an ERISA plan might, in determining whether a recordation of marriage should be issued without a marriage license, become entangled in the exercise of religion by deciding whether the person performing the marriage ceremony is a legitimate Iman, priest, minister, or other religious authority authorized to perform the ceremony.

4